STATE, CHARLES A. BILLINGS, PROSECUTOR, v. GEORGE
B. FIELDER.

1. Section 10 of the act of 1875, p. 324, does not authorize the election
of a clerk of the board of freeholders of Hudson county; such clerk is
to be elected by virtue of section 8 of the general law concerning chosen
freeholders. *Rev.*, *p.* 128.
2. A majority vote of the board is sufficient to elect such clerk, without
the approval of the director.
3. In the absence of the director at large, the board may elect one of its
members to act as presiding officer at its meeting, but all acts and res-
olutions of the board at such meetings upon matters requiring the con-
currence of the director at large, must be submitted to such director
for his approbation.
4. Although a ruling of the director at large cannot, under the act of
1876, p. 222, be reversed by less than a two-thirds vote, this court has
power to correct any unlawful action of such director, and to require
him to execute the functions of his office.

On application for *mandamus.*

Argued at June Term, 1882, before Justices DEPUE, VAN
SYCKEL and REED.

For the relator, *Gilbert Collins* and *C. S. See.*

For the defendant, *A. L. McDermott* and *Leon Abbett.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is an application by the relator,
who claims to be the duly elected clerk of the board of chosen
freeholders of the county of Hudson, for a *mandamus* to
Fielder, the late clerk, commanding him to deliver to the re-
lator the common seal, minutes, papers, documents, &c., be-
longing to said board.

The facts upon which the relator bases his title to the office
of clerk of the board, are alleged by him to be as follows:

The board met, pursuant to adjournment, on the 18th of May, 1882. It is composed of twenty members, besides the director at large. It was moved to proceed to the election of a clerk. The director declared the motion out of order. An appeal was taken from his decision. Thirteen members voted to sustain the appeal, but the director decided that the appeal did not prevail, on the ground that his decision could not be set aside by less than a two-thirds vote. Freeholder Baldwin then stated that as the director refused to do his duty, he would put the motion and proceed with the roll call of the ayes and nays. He did so, and declared the motion to proceed to the election carried.

The director refused to call for nominations, whereupon Baldwin did it and the relator was nominated. The director refused to call for the vote and Baldwin proceeded to do so, and called the ayes and nays. After five names had been called a motion to adjourn was made and seconded. Baldwin stopped to await the vote on this motion. The director ignored the call for ayes and nays and took a *viva voce* vote, and declared the motion to adjourn carried, although thirteen members protested that the motion was lost. The director and seven members then left the room, and were soon followed by one of the thirteen.

Twelve members of the board remained and at once elected Baldwin acting director. He took the chair, and thereupon Billings, the relator, was elected clerk.

The title of Fielder, the defendant, to the office, is this:

He was elected clerk in May, 1881, for one year. On the 20th of April, 1882, prior to the incoming of the newly elected members of the board, he resigned the position; his resignation was at once accepted and he was re-elected for the term of one year.

The settlement of this controversy involves the construction of the act of 1875, p. 324, re-organizing the board of chosen freeholders of the county of Hudson.

Section 1 of that act provides that a director of said board shall be elected at large for two years from the whole county;

section 2 provides that any vacancy in his office shall be filled by the board for the unexpired term of his office.

The duties of the director at large, as prescribed by the first section, are that he shall appoint all committees of said board and perform all the duties of a presiding officer, but shall have no vote in said board, except in case of a tie, and that every resolution of the said board affecting the interests of the county, shall, before it takes effect, be approved, in writing, by said director, and if he fails to approve it the board may reconsider it, and if two-thirds of all the freeholders elected shall vote for the resolution it shall take effect as a law. The resolutions provided for in this section are resolutions making appropriations of public moneys and directing work to be done or improvements made. The section has no reference to the election of officers. The election of officers is provided for in section 10. The officers required to be elected by that section must be approved by the director at large, in writing, and his objection cannot, under that section, be overruled even by a two-thirds vote.

The language of the section is, that "the said board provided for by this act, and its successors, shall have power to appoint such officers, agents and employés as may be required to do the business of said county, and fix their compensation and term of service."

It is claimed by the defendant that under this section the board had authority to accept the resignation of Fielder as clerk prior to the incoming of the new board, and to re-elect him for a term to be fixed by them.

The officers to be elected under this section are officers required to do the business of the county, and not officers necessary to perfect the organization of the board.

There are duties prescribed by the same section to be performed antecedent to the election of any officer thereunder, which contemplate the prior due organization of the board with a clerk. Applications, in writing, for appointments are to be handed in, and resolutions fixing salaries are to be passed. It is the appropriate duty of a clerk to receive and

take charge of such applications and to record such resolutions.

By the fourth and twelfth sections of the act of 1875, all general laws relating to the board of chosen freeholders not inconsistent with said act, are made applicable to the board of chosen freeholders of Hudson county.

The tenth section of the act of 1875 makes citizenship in the state for one year prior to appointment the only qualification of the appointee. Section eight of the act concerning chosen freeholders, requires the clerk to be a freeholder and resident in the county, and not a member of the board.

These sections are not inconsistent, and they must, by the accepted rule of interpretation, be so construed that both may have effect.

Giving legal operation to both sections, the clerk of the board is clearly not included among the officers to be chosen under the tenth section of the act of 1875, but by the eighth section of the general law is to be chosen annually, and it was, therefore, the duty of the director at large and of the board to proceed primarily to the election of a clerk.

No authority is given to the director at large, either in the act of 1875 or in the general law, to obstruct this preliminary proceeding by his refusal to concur in the choice of a majority, nor so far as respects the election of a clerk is a two-thirds vote necessary to overrule his decision.

The act of 1876, p. 222, is relied upon to justify the exercise of the authority claimed by the director.

The first section of the act provides that any ruling of the director at large of any board of chosen freeholders, may be appealed from at the time of such ruling by any two members of the board over which he is presiding, and upon such appeal being sustained by a two-thirds vote of all the members, the director at large shall be reversed as to such ruling.

If the act is constitutional, the effect of this section is to deprive the board of the power to reverse any ruling of the director by a less than two-thirds vote, but it refers only to the power of the board itself, and does not take away the

superintending jurisdiction of this court over the inferior tribunal, nor prevent this court from setting aside any illegal conduct of the director in his official capacity.

The second section of the act provides that in case the director at large shall veto any resolution passed by the board, or any appointment made by the board, a two-thirds vote may override his veto. This section refers to action taken after the organization of the board, and does not include the election of a clerk.

It embraces only appointments made under and by virtue of the power conferred by the tenth section of the act of 1875.

An illustration of the effect of this interpretation of the act of 1876 is furnished by this case.

The clerk of the board is elected by authority of the general law, annually. It was the duty of the new board to make such election. It is to be done by a majority vote, no authority being given to the director, either by the general law or by the act of 1875, to reject the action of the majority in this respect. If, therefore, a clerk shall be elected by a majority of the board, and the director should refuse to recognize the selection as legal, and rule that he was not elected, because it requires a two-thirds vote to overrule his objection, the only remedy would be by appeal to this court to set aside the illegal ruling, and require him to execute the duties of his office.

Under the first section of the act of 1875, a three-fold duty falls upon the director at large :

1. He is to preside at the meetings of the board.

2. He shall appoint all committees.

3. No resolution of the board affecting the interests of the county shall take effect without his approval, unless it is passed over his veto by a two-thirds vote; and by section 10, without his concurrence no appointment of officers to transact the business of the county can be made.

As has been said, no authority is conferred upon the board to elect a director to act with full power of the director at large in his absence. He is chosen by the popular vote, and

only in case of a vacancy in the office can his place be filled by the board, and then it must be for the unexpired term of his office. Manifestly, this does not include the contingency of his temporary absence from a meeting of the board. He is invested by the law with wide discretionary power, which he is bound to exercise in person; no one can be appointed temporarily to exercise it for him.

The power of obstruction granted to him is very great. It may be and probably is wisely bestowed to prevent fraudulent and illegal appropriation of the public funds. Whether so or not, it must be accepted and dealt with as it came from the hands of the law-maker.

But the inability of the board to substitute one of their own selection to discharge those duties requiring the exercise of a wise discretion, which the law has committed only to the officer chosen by the people, does not extend so far as to hinder the board from choosing one of its members to the mere duty of presiding over its deliberations when the director is necessarily or wilfully absent from its meetings.

In such case, *ex necessitate,* the general rule of parliamentary law which governs legislative bodies must apply, so far as to enable the board to elect a presiding officer *pro tempore,* to conduct its deliberations in due and orderly form. In such case the authority he can exercise will be merely that of a presiding officer; all acts and resolutions of the board at such times upon matters requiring the concurrence of the director at large, must be submitted to said director for his approbation.

No reference has been made to the act of 1880, p. 275, for the reason that under the view here taken it does not apply to the election of a clerk of the board.

The construction of the several laws pertaining to this controversy being thus disposed of, it remains only to apply the law to the facts presented by the contest.

Fielder was elected in 1881 under the general law, for one year, his term expiring in May, 1882, on the incoming of the new board, and there was no power under the tenth section

of the act of 1875 to accept his resignation and re-appoint him, he not being one of the officers referred to in that section.

Assuming the facts to be as presented by the relator, the director at large at the meeting on the 18th of May was not necessarily or wilfully absent, neither did he refuse to act in his official capacity. On the contrary, he was present and acting, and ruled that the board, by its vote, had agreed to an adjournment.

Admitting the decision of the director to have been erroneous and arbitrary, a majority of the board could not do, indirectly, by re-organizing after he left, what they could not have done directly at the meeting when he was present, by less than a two-thirds vote. In the absence of the director from a regular meeting of the board, a member could be chosen to act as mere presiding officer, but for an unlawful decision of the director when present at the meeting, the appropriate remedy is by *certiorari*, and for any unlawful refusal on his part to act in the discharge of his official functions, relief may be had by application to this court for *mandamus*.

Billings was not lawfully elected and cannot be invested with the insignia of the office.

If he desires to test the title of the incumbent by *quo warranto*, he will be given leave to file an information. As a legal voter and tax-payer in Hudson county, he has a legal *status* to enable him to institute that proceeding. *State, ex rel. Mitchell,* v. *Tolan,* 4 *Vroom* 195 ; *State, ex rel. Richards,* v. *Hammer,* 13 *Vroom* 435.

No costs will be allowed.